UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARQUES SMITH,<br><br>Defendant. | 3:19-CR-30045-RAL<br><br>OPINION AND ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE AND SENTENCING REDUCTION |

A jury convicted Defendant Marques Smith of conspiracy to distribute a controlled substance, and on January 27, 2020, Smith received a sentence of 235 months in prison and 10 years of supervised release. Docs. 66, 87. Smith now seeks compassionate release based on his medical condition, which he argues constitutes an extraordinary and compelling reason to reduce his sentence. Doc. 107. Smith also seeks a sentence reduction under Parts A and B of Amendment 821 to the Sentencing Guidelines. Doc. 110. For the reasons explained, this Court denies his motions.

I.  **Factual Background**

On October 24, 2019, a jury found Smith guilty of conspiracy to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Docs. 66, 80. At trial, multiple witnesses testified to Smith's involvement in methamphetamine distribution. Doc. 80. Sara Pray testified that she witnessed multiple people purchase methamphetamine from Smith and that she traveled across state lines with Smith on several

occasions to purchase methamphetamine to be sold to other dealers. Id. at 4-5. Brooke Shields[1] testified that she dealt methamphetamine for Smith from 2015 to 2017. Id. at 6. Several other witnesses testified that they purchased methamphetamine directly from Smith. Id. at 5-6. The testimony established that at least 2.1 kilograms of methamphetamine were attributable to Smith's transactions. Id. at 8. Several witnesses testified that Smith possessed firearms during the time of his drug distribution activities. Id. at 4-6. Smith is incarcerated at FCI Greenville, and his current release date is June 27, 2036. See Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (Federal Register No.: 180033-273) (last visited Aug. 22, 2024). Id.

Smith has filed with this Court a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Doc. 107. Smith also filed a pro se motion requesting to be resentenced "in light of the Sentencing Commissions Amendment Part A and B Criminal History." Doc. 110. This Court addresses each motion in turn.

## II. Discussion

### A. Compassionate Release

Sentences are final judgments, and under ordinary circumstances, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see also United States v. Olson, No. 3:19-CR-30133-RAL, 2021 WL 4478031, at *1 (D.S.D. Sept. 30, 2021). However, 18 U.S.C. § 3582(c)(1)(A) provides an exception to this general rule. Section 3582(c)(1)(A), as amended by the First Step Act, allows district courts to hear and decide motions for a reduced sentence filed by prisoners themselves, so long as the prisoner exhausted all administrative rights to appeal the BOP's failure to file a motion on the prisoner's behalf, or after 30 days have passed

---

[1] This is Brooke Kristen Shields, not the actress Brooke Christa Shields.

from the receipt of such a request by the warden of the prisoner's facility, whichever is earlier. Here, Smith submitted his administrative request for compassionate release with the Bureau of Prisons (BOP), and the warden denied Smith's request on January 6, 2023. Doc. 108 at 150-52. Smith, therefore, has exhausted his administrative remedies,[2] and his motion is ripe for review.

Under § 3582(c)(1)(A), a district court may grant a prisoner's motion for a reduced sentence after (1) the court finds that extraordinary and compelling reasons exist,[3] (2) those reasons are consistent with the applicable policy statement promulgated by the United States Sentencing Commission, here § 1B1.13; and (3) an examination of the § 3553(a) sentencing factors supports a sentence reduction. § 3582(c)(1)(A)(i)–(ii). Congress did not define "extraordinary and compelling reasons." See 28 U.S.C. § 994(t). Instead, Congress charged the Sentencing Commission with issuing general policy statements outlining the "appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c)," including "what should be considered extraordinary and compelling reasons for sentence reduction [and] the criteria to be applied." § 994(a)(2)(c), (t). Effective November 1, 2023, the Sentencing Commission updated the criteria for what constitutes "[e]xtraordinary and compelling reason[s]" to reduce a term of imprisonment. U.S.S.G. § 1B1.13(b). As amended, "extraordinary and compelling reasons exist under any of the following circumstances or [through] a combination thereof": (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the

---

[2] The Eighth Circuit has held that § 3582(c)(1)(A)'s exhaustion requirement is non-jurisdictional but serves as a "mandatory claim-processing rule" that must be enforced if raised by the opposing party. United States v. Houck, 2 F.4th 1082, 1084 (8th Cir. 2021). The United States agrees Smith exhausted his administrative remedies and does not raise any failure to exhaust argument. Doc. 109 at 1-2.

[3] A court could also grant a reduced sentence if the defendant is at least 70 years old and has served at least 30 years in prison, see § 3582(c)(1)(A)(ii), but Smith fulfills neither of those requirements, so the Court confines its analysis to the extraordinary and compelling reasons exception under § 3582(c)(1)(A)(ii). Doc. 107 at 2-3.

defendant, (4) being a victim of sexual or physical abuse while in custody, (5) other reasons with equal gravity as the aforementioned circumstances, and (6) unusually long sentences. A "district court has broad discretion in determining whether proffered circumstances warrant" compassionate release under the First Step Act, United States v. Loggins, 966 F.3d 891, 893 (8th Cir. 2020), and it is the defendant's burden to establish that a sentence reduction is warranted, United States v. Avalos Banderas, 39 F.4th 1059, 1062 (8th Cir. 2022).

1. **Extraordinary and Compelling Reasons**

Smith seeks compassionate release based on a serious medical condition under U.S.S.G. § 1B1.13(b)(1). Doc. 107 at 5. Smith has been diagnosed with sickle cell disease, a blood disorder that can affect the flow of blood through the body and lead to serious complications.[4] Id.; Doc. 108 at 11. He has a history of sickle-cell crises, including a 2002 crisis that resulted in the removal of his spleen. Docs. 80 at 23, 107 at 5, 108 at 11. His last sickle-cell crisis was in 2016. Doc. 108 at 81. Smith receives routine Chronic Care Clinic examinations to monitor his sickle cell disease. Id. at 1-3, 16, 19-20, 48, 53, 80-81, 111, 115. Smith's health records indicate that he has not shown

---

[4] Smith's medical records indicate that he has been diagnosed with sickle cell disease and that he has sickle cell trait. Doc. 108. People with sickle cell trait usually do not have symptoms related to the disease, whereas people with sickle cell disease are prone to serious health complications. For purposes of this opinion and order, this Court presumes Smith has sickle cell disease, the more serious of the two conditions. Sickle cell disease is an inherited red blood cells disorder affecting hemoglobin, the protein that carries oxygen throughout the body. National Heart, Lung, and Blood Institute, What is Sickle Cell Disease?, National Institute of Health, https://perma.cc/W72A-7NBZ (last visited Aug. 23, 2024). Red blood cells become crescent-shaped, which may block blood flow through the body and cause serious problems, including "stroke, eye problems, infections, and episodes of pain called pain crises." Id. Sickle cell disease is a lifelong illness; however, treatments are available that can reduce symptoms and increase life expectancy. Id. The CDC lists sickle cell disease as a condition that could cause a person to become seriously ill if he or she contracts COVID-19. People with Certain Medical Conditions and COVID-19 Risk Factors, CDC, https://www.cdc.gov/covid/risk-factors/index.html (last visited Aug. 23, 2024).

4

symptoms of sickle cell disease while in custody, Id., and that in 2022 his sickle cell disease was categorized as in remission. Id. at 11.

In determining whether Smith's medical condition constitutes an extraordinary and compelling reason to reduce a defendant's sentence, this Court takes guidance from the Sentencing Commission's policy statement in § 1B1.13(b)(1). Within this policy statement, the Sentencing Commission identified specific criteria for when a defendant's medical circumstances warrant an extraordinary and compelling reason to reduce his or her sentence:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (B) The defendant is—
>    (i)   suffering from a serious physical or medical condition,
>    (ii)  suffering from a serious functional or cognitive impairment, or
>    (iii) experiencing deteriorating physical or mental health because of the aging process,
>    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
> (D) The defendant presents the following circumstances—
>    (i)   the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>    (ii)  due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>    (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

**a. Section 1B1.13(b)(1)(A)**

5

In his motion, Smith does not specifically allege that he has a terminal illness under subsection A. Doc. 107 at 4. However, he asserts that because he does not have a spleen, he could die "if he came down with pneumonia" and that the life expectancy of a "person with sickle cell is 45-50" years. Id. at 5. While a "specific prognosis of life expectancy is not required," a defendant must demonstrate the severity and progression of the illness. U.S.S.G. § 1B1.13(b)(1)(A). Here, Smith's assertions are speculative and generalized, and thus he has not shown his condition constitutes a terminal illness as set forth in the policy statement.

In the United States, the estimated life expectancy of someone with sickle cell disease is roughly 20 years shorter than average, meaning most live with the disease into their mid-50s.[5] Even against that backdrop, Smith's present medical condition does not exhibit an end-of-life trajectory. Smith is now 42 years old. Doc. 80 at 2. Throughout his time in BOP custody, Smith has received Chronic Care Clinic follow-up care to monitor his sickle cell disease. Doc. 108. He has not shown symptoms nor complained of complications from his sickle cell disease, and his last sickle cell crisis occurred in 2016. Id. at 81. While a diagnosis of sickle cell disease may constitute a terminal illness in some situations, Smith's current medical condition does not qualify as such.

**b. Section 1B1.13(b)(1)(B)**

An extraordinary and compelling reason for compassionate release exists under § 1B1.13(b)(1)(B) when an inmate suffers from a serious physical or medical condition, a serious functional or cognitive impairment, or age-related mental or physical deterioration that he is not

---

[5] Data and Statistics on Sickle Cell Disease, CDC, https://www.cdc.gov/sickle-cell/data/index.html (last visited Aug. 23, 2024). A 2019 study estimates the average life expectancy of someone with sickle cell disease is 54. https://pubmed.ncbi.nlm.nih.gov/31730182/.

6

expected to recover from and that substantially diminishes his ability to provide self-care within a custodial environment. Smith currently suffers from none of these conditions.

Medical records indicate Smith is not suffering presently any serious physical consequences, displaying any physical or cognitive impairments, nor experiencing any health deterioration. Instead, his sickle cell disease is currently in remission, and his hemoglobin count has been normal. Doc. 108 at 11, 53. Although sickle cell disease is a chronic illness, nothing in the record indicates that Smith is physically or mentally incapable of caring for himself, let alone unable to complete the more mundane tasks associated with daily living. See United States v. Korn, No. 15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *5 (W.D.N.Y. Apr. 9, 2020) (denying compassionate release to a defendant who could complete self-care activities associated with daily living, like getting dressed, bathing, eating, and being independent mobile, albeit with a cane). Accordingly, Smith's medical circumstances do not constitute an extraordinary and compelling reason for a sentence reduction under § 1B1.13(b)(1)(B).

**c. Section 1B1.13(b)(1)(C)**

To prove an extraordinary and compelling reason for a sentence reduction under § 1B1.13(b)(1)(C), an inmate must show that he is suffering from a "medical condition that requires long-term or specialized medical care that is not being provided and without which the [inmate] is at risk of serious deterioration in health or death."

Sickle cell disease is a lifelong medical condition that can lead to serious health problems such as stroke, infections, and episodes of pain; treatment plans are required to manage the condition and prolong life.[6] However, Smith has not demonstrated that the BOP is failing or unable to adequately address his medical needs. See, e.g., United States v. Profit, No.

---

[6] See National Heart, Lung, and Blood Institute, supra note 4.

819CR00210T02CPT, 2020 WL 3073910, at *2 (M.D. Fla. June 10, 2020) (denying relief where the defendant alleged that she suffers from sickle cell anemia but failed to allege "that the steps taken by the BOP to mitigate the effects of COVID-19 have failed to meet her needs"). Based on his medical records, Smith is receiving frequent and thorough medical attention. Doc. 108. Further, Smith has not demonstrated how a reduced sentence would allow him to receive more specialized or effective medical care than what he is receiving in custody.

### d. Section 1B1.13(b)(1)(D)

The Sentencing Commission's revised policy statement provides that an extraordinary and compelling reason exists when the inmate is incarcerated at a correctional facility that is presently "affected or is at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing, public health emergency" as declared by the appropriate governmental authority; the inmate has personal risk factors that put him at an increased risk of death or severe medical complications if exposed; and the inmate's increased "risk cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D)(i)–(iii). This policy statement stems from the COVID-19 pandemic and the grants of compassionate release during that time.

First, COVID-19 is no longer the sort of ongoing public health emergency that it once was. Pub. L. No. 118-3, 137 Stat. 6 (2023). The public health emergency for COVID-19 officially expired in May 2023, though it remains a health concern particularly for the unvaccinated or those with immunodeficiencies.[7] Second, FCI Greenville (where Smith is currently incarcerated) is not presently affected by or at imminent risk of being affected by an ongoing COVID-19 outbreak. At

---

[7] Assistant Sec'y for Pub. Affs., COVID-19 Public Health Emergency, U.S. Dep't Health and Hum. Servs., https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html (last visited Aug. 27, 2024).

8

the time this opinion and order was written, FCI Greenville had zero open cases of COVID-19, with 657 of the 1,164 total inmates fully inoculated against COVID-19.[8]

The CDC lists sickle cell disease as a condition that could cause a person to become seriously ill if he or she contracts COVID-19.[9] Still, Smith's risk of serious illness and death can be "adequately mitigated in a timely manner" through inoculation.[10] COVID-19 vaccines are a safe and effective way to reduce the risk of serious illness or death associated with COVID-19. See United States v. Lara, No. 3:16-CR-30160-RAL, 2021 WL 1207875, at *3 (D.S.D. March 30, 2021) (stating that defendant's "risk of severe illness from COVID-19 is exceedingly low" after being fully inoculated). The BOP has COVID-19 vaccines and boosters available for all staff and inmates.[11] Smith's medical records reveal he overcame a case of COVID-19 in 2020 and that he received two doses of a COVID-19 vaccine in 2021. Doc. 108 at 11, 65, 79, 105.

In short, although Smith has a personal risk factor that increases his risk of death or severe illness from COVID-19, he is unable to show that FCI Greenville is affected or at imminent risk of being affected by an ongoing COVID-19 outbreak, nor can he show that his risk cannot be adequately and timely mitigated. Thus, Smith has failed to show two out of the three elements needed to establish an extraordinary and compelling reason under § 1B1.13(b)(1)(D).

2. Section 3553(a) Sentencing Factors

Although a court need not consider the § 3553(a) factors when there are no extraordinary or compelling reasons to reduce a sentence, United States v. Brown, No. 4:18-CR-40138-LLP,

---

[8] COVID-19 Modified Operations Plan & Matrix, Fed. Bureau of Prisons, https://perma.cc/ZP3B-59B8 (last visited Aug. 27, 2024) (facility code: GRE).
[9] See People with Certain Medical Conditions and COVID-19 Risk Factors, CDC, supra note 4.
[10] Benefits of Getting Vaccinated, CDC (Aug. 27, 2024), https://perma.cc/3NT8-BKGZ.
[11] Federal Bureau of Prisons Clinical Guidance, COVID-19 Vaccine Guidance 3 (Jan. 2023), https://www.bop.gov/resources/pdfs/covid_vaccine_guidance.pdf?v=1.0.0.

2023 U.S. Dist. Lexis 83723, at *12 (D.S.D. May 9, 2023), a review of the § 3553(a) factors weighs somewhat against granting compassionate release to Smith. The § 3553(a) sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a). These factors inform the Court's duty to ensure the sentence imposed is "'sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in § 3553(a)[]." Pepper v. United States, 562 U.S. 476, 491 (2011).

The "nature and circumstances of the offense and the history and characteristics of the defendant," weigh against a reduction in Smith's sentence. Smith was convicted of conspiracy to distribute 500 or more grams of methamphetamine. Docs. 66, 80. Though testimony about the quantity of drugs was somewhat inexact, the evidence at trial established that Smith was involved in distributing at least 2.1 kilograms of methamphetamine. Id. at 8. Two witnesses testified that Smith possessed a firearm during the transactions. Id. at 9. Smith, who is a non-Indian, was bringing large quantities of methamphetamine to the Crow Creek and Lower Brule reservations in central South Dakota for distribution, compounding the widespread addiction issues there.

10

Smith's personal history and characteristics neither weigh for nor against a sentence reduction. Smith grew up in Colorado and moved to South Dakota to attend college and play football. Id. at 22. He has a moderate history of substance abuse, mostly involving marijuana. Id. at 23-24. Smith completed inpatient and outpatient treatment, where records indicate he used drugs to manage pain and anger and to cope with loss. Id. at 24. Records further indicate Smith did not have consistent employment after his football career ended in 2012[12] and that he began selling drugs to obtain money. Id. at 24-25. Smith was in Criminal History Category VI, principally based on non-violent drug possession and failure-to-appear convictions, with only one violent domestic assault. That is, Smith has a less rugged conviction history than most others in the highest criminal history category. Indeed, this Court departed downward when sentencing Smith, considering Criminal History Category III to be more appropriate.

Smith's original sentence was designed not only to deter Smith and others from committing similar crimes, but also to protect the public from Smith involving himself in further drug distribution activities. This Court determined that a sentence of 235 months was sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. Smith has over ten years left to serve on his sentence. After thoroughly reviewing the record of this case in light of the remaining § 3553(a) factors, including the kinds of sentences available, the need to avoid unwarranted sentencing disparities, and the need to provide educational, vocational, or correctional treatment in the most effective manner, this Court concludes that these factors are not served by a reduced sentence under the current circumstances.

---

[12] Smith had excelled in college football and then as a professional in arena league football.

11

## B. Amendment 821

Smith additionally seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2). Doc. 110. He references both Part A and Part B of Amendment 821 to the Sentencing Guidelines, so this Court will address Smith's eligibility for a sentence reduction under both provisions.

### 1. Part A

In Part A to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission altered the "status points" provision regarding criminal history, which now appears in Section 4A1.1(e). The amended provision states:

> Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

Thus, a person who otherwise has 7 criminal history points or more now receives 1 additional "status" criminal history point, instead of 2, while one who otherwise has 6 criminal history points or fewer receives no status points. On August 24, 2023, the Commission decided that this change applies retroactively. See § 1B1.10(e)(2) (Nov. 1, 2023).

In determining whether a sentence reduction is warranted, "the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) . . . had been in effect at the time the defendant was sentenced." § 1B1.10(b)(1). Further, "[c]ourts generally may 'not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range' produced by the substitution." Dillon v. United States, 560 U.S. 817, 821 (2010) (quoting § 1B1.10(b)(2)(A)).

At the time of sentencing, Smith's guideline range, based on a total offense level of 36 and a criminal history category of VI, was 324 to 405 months of imprisonment. Doc. 87-1 at 1. Smith received an additional 2 "status points" for committing his offense while under a criminal justice

sentence, amounting to 13 total criminal history points. Doc. 80 at 17. If § 4A1.1(e) were to apply, Smith's criminal history points would be reduced to 12, placing him in Criminal History Category V. See U.S.S.G., Ch. 5, Pt. A (Sentencing Table). Category V, combined with a total offense level of 36, results in a guideline range of 292 to 365 months.

However, this Court departed downward from the guideline range and sentenced Smith to 235 months in custody—below the bottom end of the original guideline range of 324 months and below the bottom end of the amended guideline range of 292 months. This Court applied U.S.S.G. § 4A1.3(b)(1) to determine that Criminal History Category III more accurately reflected Smith's criminal history and dangerousness, resulting in an advisory guideline range of 235 to 293 months of imprisonment. Because he received a sentence below the amended guideline range, Part A to Amendment 821 does not alter the available sentence and Smith is not eligible for relief. See § 1B1.10(b)(2)(A).

**2. Part B**

In Part B, Subpart 1 to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission, effective November 1, 2023, added what now appears in §4C1.1(a), providing a 2-offense-level reduction for many offenders who present zero criminal history points. The new provision states:

> §4C1.1. Adjustment for Certain Zero-Point Offenders
> (a) ADJUSTMENT.—If the defendant meets all of the following criteria:
>   (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
>   (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
>   (3) the defendant did not use violence or credible threats of violence in connection with the offense;
>   (4) the offense did not result in death or serious bodily injury;
>   (5) the instant offense of conviction is not a sex offense;
>   (6) the defendant did not personally cause substantial financial hardship;
>   (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

13

(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
(9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
(10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; decrease the offense level determined under Chapters Two and Three by 2 levels.

On August 24, 2023, the Sentencing Commission determined that this change would apply retroactively. The Sentencing Commission further directed that a court granting relief may not order the release of a defendant to occur any earlier than February 1, 2024. See § 1B1.10(e)(2) (Nov. 1, 2023).

Smith fails to meet the criteria for a sentence reduction pursuant to § 4C1.1. As noted above, Smith received 13 criminal history points at sentencing and plainly does not qualify as a zero-point offender.

### III. Conclusion and Order

No extraordinary and compelling reasons exist to grant Marques Smith's motion for compassionate release at this time, and even if such reasons did exist, the § 3553(a) factors counsel against a reduction in his sentence under the current circumstances. If Smith's sickle cell disease progresses, Smith may file another motion for compassionate release. Smith is ineligible for a sentence reduction under either Part A or Part B of Amendment 821 to the Sentencing Guidelines. Therefore, it is hereby

ORDERED that the Motion for Compassionate Release, Doc. 107, is denied at this time without prejudice to refiling another such motion if Smith's sickle cell disease progresses to the point where extraordinary and compelling reasons justify early release. It is further

ORDERED that the Motion to Reduce Sentence, Doc. 110, is denied.

DATED this 3rd day of September, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE